UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. S1-4:18CR380 RWS |
| LEROY SHIPP, a/k/a "Stump," | ) ) ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree as follows:

**1.   PARTIES**

The parties are the defendant Leroy Shipp, represented by defense counsel William Goldstein, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2.   GUILTY PLEA**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count I of the charge, the Government agrees to move for dismissal as to Counts II, III, IV, and V of the second superseding indictment at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to the defendant's participation in a conspiracy to distribute or possess with intent to

1

distribute heroin or marijuana, or possession firearms from February 2017 through April 26, 2018 as set forth in the superseding indictment, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that defendant may request a sentence of 120 months regardless of the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court. The Government agrees that it will request a sentence within the applicable advisory guideline range.

The defendant also agrees, pursuant to the guilty plea to Count I, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to:

-$1,565.80 (cash seized from Leroy SHIPP at the time of his arrest);
-HK, .45 caliber handgun, SIN 25-119864 (seized from 5069 Wells Avenue #2E);
-Jimenez Arms Inc., .380 caliber handgun, SIN 292247, (seized from 5069 Wells Avenue #2E);
-Ruger, .380 caliber handgun, SIN obliterated (seized from 4746 St. Louis Avenue);
-Sterling Arms model 400, .380 caliber handgun, SIN G00543 (seized from 4 7 46 St. Louis Avenue);
-Ruger GP1OO revolver, .357 caliber, SIN 173-27813 (seized from 4746 St. Louis Avenue);
-Raven Arms model P25, .25 caliber, SIN 236586 (seized from 4746 St. Louis A venue);
-Lorcin L9 handun, 9 mm caliber, SIN 011374 (seized from 4746 St. Louis Avenue);
-Remington Wingmaster 870 shotgun, 12 gauge, SIN 840698V (seized from 4746 St. Louis Avenue)

3. **ELEMENTS**

As to Count I, the defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1) and 846, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(1) Beginning in or about February 2017 and continuing thereafter until at least July 2018, within the Eastern District of Missouri, two or more persons came to an agreement or reached an understanding to distribute heroin;

(2) Defendant knowingly and intentionally joined in that agreement or understanding, either at the time it was first reached or at some time thereafter while it was still in effect;

(3) At the time he joined in that agreement or understanding, defendant knew its illegal purpose;

(4) The amount of heroin involved in the offense and attributable to defendant by virtue of his own conduct and the conduct of co-conspirators reasonably foreseeable to him was in excess of one kilogram.

4. **FACTS**

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning in or about January 2017, the Drug Enforcement Administration (DEA) in St. Louis began investigation into drug trafficking activities in the 4700 block of St. Louis Avenue in the City of St. Louis. They determined that a group of individuals including defendant Shipp's co-

3

defendants, Stephon Wright, Bryan Johnston and Demetris Coleman, were distributing heroin on a daily basis to customers (both known and unknown) who frequented the area in vehicles, on foot, and even on bicycles.

As part of the investigation, DEA used confidential sources to conduct numerous controlled purchases of varying quantities of heroin in the 4700 block of St. Louis Avenue from Coleman and others. Specifically, these purchases took place on March 6, 8, 2017, April 20, 2017, October 31, 2017, and December 13, 22, 2017. Additionally, in conjunction with the surveillance conducted on these controlled purchases, law enforcement observed other hand-to-hand transactions between defendant Shipp's co-defendants and other individuals, including no fewer than 9 transactions on March 8, 2017, and one on April 20, 2017. During the course of the investigation, which included a fixed pole camera in the vicinity of the 4700 block of St. Louis Avenue, investigators observed co-defendants Wright, Johnson and Coleman spending 8-10 hours a day in the area, engaging in hand-to-hand transactions with persons both unknown and unknown.

Investigation, including thousands of man hours of physical surveillance, multiple types of judicially authorized electronic surveillance (to include GPS tracking devices placed on vehicles, Precision Location Warrants, and Title III wiretaps), and enforcement actions revealed that defendant Shipp served as a primary supplier of his co-defendants' distribution of heroin occurring on the 4700 block of St. Louis Avenue during this time frame. Investigators had observed defendant Shipp engaging in a pattern of behavior related to 5069 Wells Avenue, which he used as a stash house. They learned through precision location information over Shipp's phone that Shipp routinely visited 5069 Wells Avenue to obtain heroin prior to visits to the 4700 block of St. Louis Avenue to provide the heroin to the street-level distributors.

At the culmination of the investigation, investigators applied for and received authorization to execute six search warrants, including one at 5069 Wells Avenue (including a total of four apartments), three on the 4700 block of St. Louis Avenue. On the date of the execution of the search warrants, defendant Shipp was located near one of the target locations. He was followed by law enforcement to a short distance away and was thereafter the subject of a traffic stop.

With respect to 5069 Wells Avenue, Shipp's Missouri driver's license lists his residence as 5069 Wells Avenue, and at least one of his vehicles was registered to that address. Moreover, Shipp repeatedly reported to Pretrial Services and to the United States Magistrate Judge that he lived at 5069 Wells Avenue. A search warrant executed at 5069 Wells Avenue, Unit #2E, St. Louis, MO 63113 on April 26, 2018 revealed a clear plastic storage tote containing approximately one pound of marijuana. Nearby was a small canvas bag containing three separate zip-top bags. Each of the three zip-top bags contained three other bags, bringing the total to 9 separate bags. Each of these bags contained approximately one ounce of heroin (for a total of 9 ounces of heroin). Laying on the floor of Unit #2E was a .380 caliber Bersa semi-automatic handgun. In a closet in the same apartment was a .45 caliber, HK semi-automatic handgun. From Unit #1W, investigators seized multiple bags of marijuana, a digital scale, and mail bearing Shipp's name. From Unit #1E, investigators seized a backpack containing multiple empty gel capsules consistent with the distribution of heroin. From 4746 St. Louis Avenue, investigators seized six firearms and a small amount of marijuana. From 4748 St. Louis Avenue, investigators seized a number of empty gel capsules (consistent with the distribution of heroin).

Defendant Shipp admits agreeing with his co-defendants and others to engage in the repeated sales of heroin. The amount of heroin attributable to defendant Shipp over the course of

5

the offense is not subject to precise calculation. However, based on the known evidence, including controlled purchases, law enforcement seizures, physical and electronic surveillance, the parties are in agreement that Shipp is accountable, based on his own conduct and the conduct of his co-conspirators reasonably foreseeable to him, for more than 1 kilgoram, but less than 3 kilograms of heroin.

### 5. STATUTORY PENALTIES

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is imprisonment of not more than life, a fine of not more than $10,000,000 or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than five years, nor more than life. The defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least ten years.

### 6. U.S. SENTENCING GUIDELINES (2021 MANUAL)

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:** The parties agree that the base offense level is 30, as found in Section 2D1.1(c)(5). The parties agree that the quantity of heroin for which the defendant is accountable, including relevant conduct, is at least 1 kilogram, but less than 3 kilograms resulting in the agreed Base Offense Level. (Note: While defendant's relevant conduct includes

6

involvement in marijuana trafficking, the amount of marijuana is not sufficient to impact on the calculation of the base offense level here.)

**(2)** **Specific Offense Characteristics:**   The parties agree that the following Specific Offense Characteristics apply:

The parties agree that two levels should be added pursuant to Section 2D1.1(b)(1), because a firearm was possessed.

### b. Chapter 3 Adjustments:

**(1) Role in the Offense:** The parties agree that no levels should be added to the offense level for an aggravated role in the offense pursuant to Section 3B1.1. If the Probation Office or the Court assesses levels related to the role in the offense, the United States agrees it will request a downward variance to an offense level which does not contain an enhancement for an aggravating role.

**(2) Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known.   If the Government subsequently receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the Government may present said evidence to the Court and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1 without violating the plea agreement.

 **c. Other Adjustment(s)/Disputed Adjustments:** The parties have no further agreement regarding any other adjustments.

 **d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 29. Depending on the underlying offense and the defendant's criminal history, the defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds the defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. The defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the defendant is or is not a Career Offender. Additionally, defendant fully understands that the mandatory minimum sentence in this case, regardless of the guideline calculations, is ten years imprisonment.

 **e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

 **f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein, and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made herein but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

        **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

        **(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining the applicable Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, adopts the agreed Total Offense Level, and sentences the defendant within or above that range.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought

9

under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Government Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation, or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which the defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant

toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. The defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following:

-$1,565.80 (cash seized from Leroy SHIPP at the time of his arrest);
-HK, .45 caliber handgun, SIN 25-119864 (seized from 5069 Wells Avenue #2E);
-Jimenez Arms Inc., .380 caliber handgun, SIN 292247, (seized from 5069 Wells Avenue #2E);
-Ruger, .380 caliber handgun, SIN obliterated (seized from 4746 St. Louis Avenue);

11

-Sterling Arms model 400, .380 caliber handgun, SIN G00543 (seized from 4 7 46 St. Louis Avenue);
-Ruger GPIOO revolver, .357 caliber, SIN 173-27813 (seized from 4746 St. Louis Avenue);
-Raven Arms model P25, .25 caliber, SIN 236586 (seized from 4746 St. Louis A venue);
-Lorcin L9 handun, 9 mm caliber, SIN 011374 (seized from 4746 St. Louis Avenue);
-Remington Wingmaster 870 shotgun, 12 gauge, SIN 840698V (seized from 4746 St. Louis Avenue)

Defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $25,000. The defendant consents that the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9.    ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS

In pleading guilty, the defendant acknowledges, fully understands and, hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond

a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; and the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT

This document constitutes the entire agreement between the defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT

After pleading guilty and before sentencing, if the defendant commits any crime other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office, or fails to appear for sentencing, the Government, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA

Pursuant to Federal Rule of Criminal Procedure 11(c) and (d), the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

11/2/2022
Date

TIFFANY G. BECKER
Assistant United States Attorney

12/2/2022
Date

LEROY SHIPP
Defendant

12/2/2022
Date

WILLIAM GOLDSTEIN
Attorney for Defendant

15